Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | RONALD A. GUZMAN | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5773 | **DATE** | 9/21/01 |
| **CASE TITLE** | Jackie Wilson, #A-91126 vs. Correctional Officer G. Lee, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for protective order to secure evidence [4-1] is granted. Defendant Chrans is directed to take all reasonable measures to preserve and secure any videotape recording or other record of the alleged incident between plaintiff and Officer Lee on November 4, 2000. Plaintiff may proceed on the amended complaint against defendant G. Lee on his claim of excessive force only; all other claims are dismissed. All defendants except Lee and Chrans are dismissed. Chrans is retained as a party to this case solely for purposes of this protective order, and need not answer the complaint. The clerk shall issue summons to Lee and Chrans. The U.S. Marshal is appointed to serve defendants, and shall serve them with copies of the Memorandum Opinion and Order as well as the summons and complaint.

(11) ■ For further detail see memorandum opinion attached to the original minute order.

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 2 4 2001 date docketed | 7 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
SEP 2 4 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACKIE WILSON (#A-91126), | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 01 C 5773<br>) |
| CORRECTIONAL OFFICER G. LEE, et al. | ) Judge Ronald A. Guzmán<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jackie Wilson, a prisoner in the custody of the Illinois Department of Corrections (IDOC) at Menard Correctional Center, filed this suit under 42 U.S.C. § 1983 against IDOC staff at Joliet Correctional Center where he had previously been confined. By order dated August 3, 2001, the court dismissed the complaint without prejudice. The court noted that Wilson's allegations of conspiracy were inadequate, and the complaint did not clearly state what each defendant was alleged to have done that violated Wilson's rights.

Wilson was given leave to file an amended complaint and has done so. The court reviews it under 28 U.S.C. § 1915A, which requires the court to review complaints filed by prisoners against governmental entities or their officers or employees and to dismiss any portion of the complaint it finds frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. In determining whether the complaint states a claim upon which relief may be granted, the court applies the standard employed in deciding a motion to dismiss under Rule 12(b)(6), taking all well-pleaded allegations of the complaint as true and viewing them in the light most favorable to the plaintiff. *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000).

## ALLEGATIONS OF THE COMPLAINT

Wilson alleges that on November 4, 2000, at about 8:30 a.m., defendant correctional officer G. Lee came to Wilson's cell in the West Segregation Unit to serve a disciplinary report on Wilson. Lee asked Wilson if he would sign the report to acknowledge receipt, and Wilson

said he also wanted to sign the space indicating that he wanted witnesses to testify at his Adjustment Committee hearing. Lee told Wilson he couldn't sign the latter space and designate his witnesses until the hearing; Wilson argued that he had a right to do so. Lee then snatched the disciplinary report back through the chuckhole of Wilson's cell. Wilson responded by sticking his left arm out of the chuckhole, saying that he wouldn't remove it until he spoke to the unit sergeant or lieutenant. Lee responded that he wasn't calling anybody, and if Wilson didn't remove his arm, Lee would break it. Wilson then repeated that he wasn't moving his arm until he saw the unit sergeant or lieutenant.

Lee, according to Wilson, "without provocation" grabbed Wilson's arm and began twisting and bending Wilson's arm, hand and wrist. Lee then began slamming the chuckhole door against Wilson's arm, causing Wilson's arm to bleed. Wilson alleges the assault continued for 15 to 20 minutes before other officers arrived and told Lee to let go of Wilson's arm. Wilson then asked the officers to send for a medical technician. The incident took place in front of a video surveillance camera.

Lee radioed the unit lieutenant, defendant Romenkowski. When Romenkowski arrived, Wilson told him that Lee had assaulted him, asked to sign the disciplinary report, and asked to be taken to the hospital. Romenkowski refused both requests. While Wilson was arguing with Romenkowski, Captain Benematti and Lieutenant J. Douglas[1] arrived on the scene and began questioning the officers as to what had happened. Benematti asked Wilson why he had assaulted his officer. Wilson said that Lee had assaulted him, and asked to be taken to the hospital for medical treatment. Benematti refused, saying Wilson "wasn't going anyplace for assaulting his officer." Wilson started banging on the door of his cell, but Benematti again refused to take him to the hospital.

Wilson continued kicking on the door. Twenty-five or thirty minutes later, Romenkowski returned and asked why Wilson was kicking the door. Romenkowski again refused to have Wilson taken to the hospital, saying that he had called the hospital and discussed the matter. A short while later a female medical technician arrived and examined Wilson's arm. She gave Wilson ointment and bandages and told him to clean the cut on his arm and apply the ointment

---

[1] Wilson spells the name "Douglas" in the caption and "Douglass" in the body of the complaint.

2

and bandages. Again Wilson asked to be taken to the hospital, but the technician also refused his request.

Wilson then resumed kicking his cell door "for some four hours" until the 11 p.m. shift came on duty. The unit sergeant came to Wilson's cell, and Wilson explained that he had been assaulted by Lee and requested that an incident report be written up. The sergeant said he would "make a note of it" and would tell the unit lieutenant to come by. The unit lieutenant came to Wilson's cell and told him that he would be taken to the hospital sometime that morning because Wilson had been on a hunger strike,[2] and Wilson could see the medical staff at that time.

At about 5:00 a.m. on November 5, 2000, Wilson was taken to the hospital where he requested treatment for his arm and was refused. He was seen by several doctors and nurses but no one treated his arm. On November 6, Lee came to the hospital and attempted to provoke Wilson into assaulting him. He announced that Wilson was "the punk m --- f --- who's suing Captain Manning and Greg at Stateville"; "over here we don't give a f--- about your lawsuits and you still ain't going to get no medical treatment, bitch. I'll break your f--- neck if you say anything." Wilson did not answer.

On November 7, Wilson spoke with Superintendent Dwight Drayton about being denied medical treatment, the hunger strike and the assault. He told Drayton that the incident with Lee should have been captured on the video surveillance camera and asked if Drayton had seen the video recording. Drayton said there was nothing he could do about getting Wilson medical treatment, but said he would review the video recording, and if it showed that Lee had attacked Wilson, Lee would be "dealt with."

On November 9, 2000, Wilson appeared before defendants Coutee and Trout of the Joliet Adjustment Committee to respond to three different disciplinary reports. In each case he asked for a continuance so that he could call witnesses and was refused. Wilson does not give the charges alleged in the first two disciplinary reports, but alleges that Coutee and Trout convicted him "in conspiracy with the reporting officer." The third disciplinary report had been written by Lee and charged Wilson with assaulting Lee on November 4. Wilson alleges that the Adjustment Committee contacted Lieutenant Douglas, who lied to them, and Coutee and Trout "in conspiracy against plaintiff" found him guilty of this charge as well. Wilson does not state what

---

[2] Wilson does not explain in the complaint why he was on a hunger strike, or how long it had lasted.

punishment was imposed. He does allege that the Adjustment Committee's recommendation was approved by defendant James Chrans, the warden of Joliet Correctional Center, and that IDOC Director Donald Snyder denied his appeal of the disciplinary convictions, thereby "condoning illegal conspiracy" by Lee and the Adjustment Committee.

In concluding his allegations, Wilson makes sweeping allegations of conspiracy:

> All named defendants were acting in conspiracy with one another to cover up plaintiff['s] assault and to deny him of medical treatment in retaliation to lawsuits filed against guards at Stateville. All defendant acts and omissions made in conspiracy collusion corroboration by express or implied consent knowingly willfully, arbitrarily maliciously and intentionally in bad faith with deliberate indifference and reckless disregard deprived plaintiff of his constitutional right to be free from retaliation from exercising his first amendment right to access to the courts to be free from cruel and unusual punishmnebnt and to be sustained due process and equal protection of the law in violation of the 1st, 8th and 14th amendment[s] to the United States Constitution.[3]

## ANALYSIS

### A. CONSPIRACY

Allegations of conspiracy are a powerful weapon, not only in criminal prosecutions but in civil suits as well, since a conspiracy renders the conspirators agents of each other, responsible for each others' acts. But a conspiracy requires an agreement. As Wilson was told in the court's August 3, 2001, order, it is not enough just to say the defendants conspired with each other; the complaint must allege facts from which an agreement can be inferred. *See Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 860 (7th Cir. 1999); *Kunik v. Racine County*, 946 F.2d 1574, 1580 (7th Cir. 1991). The fact that different officers each refused to send Wilson to the hospital is no reason to suppose they conspired together. Each may have believed Wilson didn't need treatment, or each may have acted out of his own malice towards Wilson; in neither case would there be a conspiracy. The language quoted above is precisely the kind of vague, conclusionary statement the court found insufficient in the initial complaint. In the absence of sufficient allegations of conspiracy, the acts of each defendant will be considered independently, and Wilson can state a claim against a defendant only if that defendant's own actions deprived him of his constitutional rights.

---

[3] Complaint ¶¶ 55-56.

4

## B. OFFICIAL CAPACITY

Although Wilson purports to sue all defendants in both their individual and official capacities, he may sue them only in their individual capacities. An official-capacity suit against a state employee is effectively a suit against the state, and the Eleventh Amendment bars damage claims against a state in federal court. *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000); *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992), *cert. denied*, 508 U.S. 942 (1993). Further, neither states nor state officials acting in their official capacities are "persons" within the meaning of 42 U.S.C. § 1983. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

## C. EXCESSIVE FORCE

When force is used to subdue a prisoner, the decisive question is not whether the prisoner sustained a serious injury but "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Taking Wilson's allegations as true, Wilson had refused Lee's order to withdraw his arm from the chuckhole, and Lee could use reasonable force to make Wilson comply. But by holding onto Wilson's arm while battering it, Lee went beyond reasonable force, since he was simultaneously inflicting pain while preventing Wilson from withdrawing his arm.[4] Wilson has stated a claim against Lee in his individual capacity.

## D. DENIAL OF MEDICAL TREATMENT

Wilson complains that the correctional officers refused to take him to the prison hospital, and when he was taken there the next day the staff refused to treat him. The Seventh Circuit recently summarized the relevant law in *Wynn v. Southward*, 251 F.3d 588 (7th Cir. 2001). To state an Eighth Amendment claim for denial of medical care, a prisoner must allege that he had a serious medical need and the defendants were deliberately indifferent to it. An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

---

[4] In a pending suit before this court Wilson has alleged that almost two years earlier another correctional officer slammed a chuckhole door on Wilson's arm after he refused to remove it. *Wilson v. Howell*, No. 00 C 5205. Without condoning the alleged behavior of either defendant, one wonders why Wilson repeated the tactic.

5

attention." *Id.* at 593 (internal quotations omitted). Deliberate indifference is more than mere negligence; it requires the prisoner to show that the defendant was aware of the prisoner's serious medical need and disregarded an excessive risk to the prisoner's health or safety from lack of treatment. *Id.*

According to the complaint, Wilson's arm had been manhandled by Lee and had been cut by the chuckhole door. Taking the allegations as true, Lee, having wrongfully inflicted the injury, had an obligation to seek medical attention for Wilson, even if only to ameliorate his pain. "When guards use excessive force on prisoners, the requirements for proving deliberate indifference to the medical needs of the beaten prisoners ought to be relaxed somewhat. Beating a person in violation of the Constitution should impose on the assailant a duty of prompt attention to any medical need to which the beating might give rise, by analogy to the duty in ordinary tort law to provide assistance to a person whom one has injured, even if without fault." *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996).

But although Lee, and perhaps Romenkowski, Benematti and Douglas as well, had an obligation to obtain immediate medical attention for Wilson, Romenkowski did send for help some twenty or thirty minutes later and Wilson was seen by a medical technician. Delay in providing medical attention can violate the Eighth Amendment, of course, but a twenty or thirty minute delay in the case of a non-life threatening injury such as this is *de minimis*. See *Simmons v. Clemons*, 752 F.2d 1053, 1055 (5th Cir. 1985)(two-hour deprivation of pain medication *de minimis*); *Mitchell v. Fairman*, 1996 WL 420294 (N.D. Ill. 1996)(Gettleman, J.); *Compare Gutierrez v. Peters*, 111 F.3d 1364, 1371-72 & n.6 (7th Cir. 1996)(collecting cases involving delay in treating painful conditions). Any suffering caused by this delay did not amount to a legally cognizable injury.

Once the medical technician had examined Wilson and given him ointment and bandages, correctional officers without medical training could reasonably rely on her judgment that Wilson did not need to be sent to the hospital. Nothing in the complaint suggests that it would have been obvious to a layperson that Wilson required further treatment, and it would not have been deliberate indifference to refuse to override her judgment.

For that matter, nothing in the complaint suggests that it would have been obvious even to a medical professional that Wilson required additional treatment for his arm. While it is

reasonable to infer from Wilson's allegations that his injury needed *some* treatment, it would be unreasonable to infer that he had to go to the hospital or be seen by a physician. Wilson does not allege any complications or any continuing disability that would suggest, in hindsight, that the treatment given Wilson was inadequate, much less that the technician *knew* it was inadequate at the time. Wilson has not stated a claim against the medical technician.

Finally, once Wilson was taken to the hospital -- perhaps because of his injury, or perhaps because his hunger strike or his persistent banging on his cell door suggested a mental breakdown -- nothing was done for his arm. Wilson complained to Superintendent Drayton, who did not intervene. But once again, as the complaint does not suggest that it would have been obvious to a layperson that treatment was being improperly denied, Drayton was entitled to rely on the judgment of the medical staff.

As for the liability of members of the medical staff themselves, Wilson must allege facts from which it can be inferred that their failure to further treat his arm was not based on medical judgment. Negligence, even malpractice, is not cruel and unusual punishment. The court will not second-guess professional decisions concerning medical treatment unless "the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Estate of Cole v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997); *see also Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir. 1991)(refusal of doctor or nurse to treat inmate may be actionable if accompanied by actions that suggest hostility, brutality or viciousness but not if based on reasoned determination that inmate is a malingerer).

Wilson alleges he demanded treatment, but does not say what aditional treatment he thinks he should have received. Wilson does not allege that his arm was broken, or failed to heal. Ointment and bandages is a plausible treatment for cuts and bruises. "[T]he question whether an X-ray--or additional diagnostic techniques or forms of treatment--is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice...." *Estate of Cole*, 94 F.3d at 261 (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Wilson cannot

7

create a federal claim by demanding treatment for a condition that does not require it. The medical care claims are accordingly dismissed.

### E. DENIAL OF DUE PROCESS

Wilson alleges that Lee, Romenkowski, Benematti, Coutee and Trout denied him due process of law in that they prevented him from calling witnesses to testify on his behalf before the Adjustment Committee. This does not state a claim under § 1983, as his conviction of the disciplinary offenses could not have deprived him of a constitutionally protected interest.

Wilson does not state what punishment he suffered as a result of his disciplinary convictions, but IDOC regulations provide that violations of disciplinary rules may be punished by confinement in disciplinary segregation, by loss of privileges, or by loss of "good time" credits. "Good time" credits are a constitutionally protected liberty interest because they are granted by statute and affect the length of a prisoner's confinement. *Hamilton v. O'Leary*, 976 F.2d 341, 344 (7th Cir. 1992). Nevertheless, it is a matter of public record that Wilson is serving a life sentence, so the length of his confinement could not have been affected by his punishment.[5/]

That leaves confinement in disciplinary segregation and loss of privileges. Under *Sandin v. Conner*, 515 U.S. 472 (1995), as interpreted by decisions of the Seventh Circuit, neither disciplinary segregation nor loss of privileges implicates a constitutionally protected liberty interest. *See Walker v. O'Brien*, 216 F.3d. 626, 630 n.3 (7th Cir. 2000); *Wagner v. Hanks*, 128 F.3d 1173, 1176 (7th Cir. 1997)(segregation); *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997)(privileges). In other words, as far as the Constitution is concerned, such deprivations are to be expected as part of a prison sentence and can be inflicted without due process of law. Although Illinois law or IDOC regulations may impose certain procedural requirements, failure to comply with them is not a matter of constitutional concern and will not support a claim under § 1983. Wilson has no due process claim against any of the defendants.

---

[5/] *See People v. Wilson*, 257 Ill.App.3d 670, 628 N.E.2d 472 (1st Dist. 1993)(affirming life sentence), *appeal denied, People v. Wilson*, 155 Ill.2d 575, 633 N.E.2d 14 (1994)(table). The court may take judicial notice of matters of public record in deciding a motion to dismiss, *Anderson v. Simon*, 217 F.3d 472, 474-75 (7th Cir. 2000); *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994), and presumably may do so in an initial review under 28 U.S.C. § 1915A.

8

## F. RETALIATION

Wilson alleges that the defendants conspired to cover up the assault on him and deny him medical treatment in retaliation for prior suits filed against prison staff at Stateville Correctional Center. Wilson need not have a protected liberty or property interest to complain of retaliatory treatment, since he has an independent First Amendment right to seek redress of grievances. *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000); *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267, 275-76 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139, 1143 (7th Cir. 1988).

Nevertheless, the complaint must contain allegations from which retaliation can plausibly be inferred. Wilson alleged that Lee was aware of Wilson's prior suits against Stateville officers, and that Lee told those present in the medical unit. It is reasonable to suppose that Lee anticipated that Wilson would sue him, and may have wanted Wilson to receive little or no care, since a record of extensive treatment would tend to show that Wilson had been seriously injured. But the complaint, as discussed above, fails to establish any basis for concluding that Wilson suffered a serious medical condition which was not treated. On the contrary, from the allegations in the complaint appears that the treatment given was reasonable in light of the injuries complained of. The complaint fails to describe conduct which would amount to retaliation. Furthermore, it is not plausible to infer that this concern motivated the medical staff, and it is highly unlikely that they were motivated by a desire to retaliate for Wilson's suits against officers at another institution whom they may not even have known. The medical staff had a more personal, contrary interest: if they neglected a serious injury, they would themselves be sued. Alerted to the possibility that Wilson was inclined to file lawsuits, they would have been inclined to give Wilson more attention, rather than less.

Turning to the disciplinary reports and alleged denial of due process, nothing in the complaint provides a foundation for a retaliatory motive on the part of any defendant but Lee, and Lee's alleged actions are better explained by other, obvious reasons. It is implausible that Lee falsely charged Wilson with assault in order to punish him for suing Stateville officials. While it is plausible that Lee wrote the disciplinary report to protect himself against an anticipated future grievance or suit, this would not implicate Wilson's First Amendment rights,

9

since charging Wilson would not reasonably be calculated to deter him from grieving the alleged assault or suing Lee.[6/] Wilson has not made out a separate claim for retaliation.

### G. STATE LAW CLAIMS

This court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367. While presumably Wilson has a claim for battery under Illinois tort law, subject to state-law prerequisites and defenses, Wilson also asserts claims under the Illinois Constitution and IDOC regulations. As far as the court is aware, Illinois courts have not found that applicable provisions of the Illinois Constitution or IDOC regulations imply a private right of action in favor of aggrieved prisoners, and it would be inappropriate for a federal court to do so. *See* 28 U.S.C. § 1367(c)(1).

### H. LEAVE TO AMEND

Wilson seeks leave to amend his amended complaint, stating that he has limited use of his left hand and arm due to permanent injury and nerve damage. The extent of Wilson's injury is a matter for proof at trial; he does not need to make specific allegations in his complaint.

### I. PROTECTIVE ORDER

Wilson has asked the court to issue an order requiring IDOC officials to preserve the videotape recording the incident between himself and Lee on November 4, 2000. The order is granted. Warden Chrans, or his successor as warden of Joliet Correctional Center, is directed to locate and secure any videotape or photographic record of the incident between Wilson and Lee on November 4, 2000 and take all reasonable measures to preserve and secure any such videotape or photographic record until the final disposition of this case, including any appeal, or as may be otherwise ordered by the court.

Wilson also asks to see the videotape, which presents difficulties since Wilson is no longer at Joliet Correctional Center. While Wilson, or his counsel, as well as Lee or his counsel, will

---

[6/] *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997), hold that if proof of a § 1983 claim would *necessarily* imply the invalidity of a disciplinary conviction, suit may not be brought until the conviction has been set aside. But whether Wilson was properly found guilty of assaulting Lee has no necessary relation to whether Lee used excessive force on Wilson. Lee's bringing charges against Wilson could not have interfered with Wilson's pursuit of legal remedies.

10

have the right to view the videotape as part of pretrial discovery, the court will not specify at this time how this is to be arranged. If the parties cannot agree on a mutually satisfactory arrangement they can seek resolution from the court. Warden Chrans is retained as a defendant solely for purposes of implementing this protective order, and need not answer the complaint.

**CONCLUSION**

Wilson may proceed on his claim of excessive force in violation of the Eighth Amendment against defendant Lee in his individual capacity. The rest of the complaint is dismissed under 28 U.S.C. § 1915A, or, alternatively, 28 U.S.C. § 1915(e)(2)(B), for failure to state a claim upon which relief may be granted. Wilson's motion for a protective order to preserve evidence is granted.

IT IS SO ORDERED.                    ENTERED:            9/21/01

Ronald A. Guzmán, Judge
United States District Court